**UNITED STATES, Appellee,**

v.

**Private First Class Stephen D. HILL, SSN 112–40–9595, United States Army, Appellant.**

**SPCM 16453.**

U. S. Army Court of Military Review.

16 June 1982.

Captain Marcus C. McCarty, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Major Raymond C. Ruppert, JAGC, and Major Joyce E. Plaut, JAGC.

Captain Paul E. Jordan, JAGC, argued the cause for the appellee. With him on the brief were Colonel R. R. Boller, JAGC, Major John T. Edwards, JAGC, and Captain Paul K. Cascio, JAGC.

Before MITCHELL, MILLER and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

MILLER, Judge:

An initial issue in this case is the admissibility of hearsay statements made by a mother to her injured son's attending physician. A similar issue involves the admissibility of an extract of appellant's medical records reflecting various conversations between a social worker, the appellant, his injured son, and the appellant's wife.

The appellant was tried *in absentia* and convicted of assaulting his four-year old son Rondell by striking him in the face and dropping him to the floor, thereby intentionally inflicting grievous bodily harm.[1] He was sentenced to a bad-conduct discharge.

At trial, the Government sought to identify the appellant as his son's assailant through two types of evidence. First, Major Grace Nidhiry, the physician attending Rondell's injuries, related her conversation with Mrs. Hill (appellant's wife and Rondell's mother). The mother told Dr. Nidhiry that "the child was punished by the father, ... the father held him against the wall high and dropped him." The second type of evidence consisted of a fifteen page extract of appellant's medical records from the Family Social Services Center, Walson Army Hospital at Fort Dix, New Jersey. The records detail the appellant's admission that he disciplined his son for "sassing" back and narrate a similar description by mother and child of how the injuries occurred. The appellant's timely hearsay objection to the testimony of Dr. Nidhiry and the introduction of the medical records were overruled by the military judge. There was no other evidence introduced by the Government identifying the appellant as his son's assailant.

### I

Appellant contends that the statements made by Mrs. Hill to Dr. Nidhiry are inadmissible hearsay. The Government concedes that the statements are hearsay but argues they fall within the exceptions expressed in Military Rules of Evidence 803(4) or 803(2).

Mil.R.Evid. 803(4) provides that:

Statements made for the purpose of medical diagnosis or treatment [which describes] medical history, or past or present symptons, pain, or sensations, or the inception or general character of the cause ... reasonably pertinent to diagnosis or treatment.

The rationale for the rule depends upon the declarant's "strong nature to tell the truth because diagnosis or treatment will depend in part upon what the patient says." *United States v. Iron Shell*, 633 F.2d 77, 84–85 (8th Cir. 1980). The drafter's *Analysis* suggests this rule also applies to statements made on behalf of others, so long as the statements are necessary for diagnosis or treatment. Analysis of the Military Rules of Evidence, Appendix 18–104, Manual for Courts-Martial, United States, 1969 (Revised edition). Statements by family members would be especially trustworthy as they normally possess similar strong motives to make accurate statements.

◼ The key question in determining trustworthiness is whether the statements were reasonably pertinent to diagnosis or treatment. Statements concerning the general circumstances surrounding an injury would almost always be pertinent to a doctor's diagnosis and treatment. Thus, they should qualify for admission unless their trustworthiness is otherwise suspect. The admission of statements identifying the individual who caused the injury is not specifically precluded by the rule, but most courts confronting the issue have held that accusations of criminal fault are inadmissible. *United States v. Iron Shell, supra*, 633 F.2d at 84; *United States v. Nick*, 604 F.2d 1199, 1201–1202 (9th Cir. 1979); *United States v. Narciso*, 446 F.Supp. 252 (E.D.Mich.1977). The reason for excluding statements as to the assailant's identity is that often if a declarant makes the statement while under the impression that he or she is being asked to indicate who is at fault, his response may take on an accusatory nature, destroying any inherent reliability. Identification evidence is also rarely, if ever, pertinent to a doctor's diagnosis or treatment of the patient.[2]

---

**1.** In violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928 (1976).

**2.** In an exceptional case the name of the individual may become necessary for treatment. Thus, in *United States v. Narciso*, 446 F.Supp. 252 (E.D.Mich.1977) the court recognized that

In the case at bar, Dr. Nidhiry's inquiry into the cause of Rondell's injuries ceased to become relevant for diagnosis or treatment at the point she learned that the child had been struck and dropped on the floor. Identification of the appellant as Rondell's assailant did not promote Rondell's treatment. Indeed, Dr. Nidhiry testified at trial that she queried Mrs. Hill as to who caused the injuries not to aid in the treatment of the child's injuries, but to assure the family situation was corrected to prevent future harm (*i.e.* report the matter to responsible criminal authorities).

We likewise conclude that the statements failed to qualify as an excited utterance under Mil.R.Evid. 803(2). In order to find that 803(2) applies, it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited, or impulsive rather than the product of reflection and deliberation. *United States v. Knife*, 592 F.2d 472 (8th Cir. 1979); *United States v. Napier*, 518 F.2d 316 (9th Cir.) *cert. denied* 423 U.S. 895, 96 S.Ct. 196, 46 L.Ed.2d 128 (1975). The factors to be considered include lapse of time between the startling event and the utterance, as well as, the declarant's age, physical and mental condition, the circumstances of the event, and the declarant's basis for knowing the statements to be true and accurate.

In this case, Mrs. Hill spoke with Dr. Nidhiry not while the event was being perceived or even immediately thereafter but rather at some time later while her son was being treated elsewhere for the injuries received. The lapse of time and the absence of the startling event (the assault) permitted the mother time to reflect upon what had transpired. Moreover, as noted above, the mother was encouraged by Dr. Nidhiry to "fingerpoint," affixing criminal responsibility on the appellant. Also the declarant was not a child of tender years but a mature adult who would more readily appreci-

ate the significance of her statements. While there is evidence in the record that the mother was "upset" at the time she spoke with Dr. Nidhiry, her condition does not suggest that she was then suffering the severe stress or traumatic shock normally associated with excited utterances.

## II

The Government asserts that the extract of appellant's medical records was admissible under Mil.R.Evid. 803(8)(B), 701, 704 and 801(d)(2)(A). The medical records chronicle contacts between social workers at the Fort Dix, New Jersey Social Service Center and appellant's family. In part, the social worker opines "This is a physical abuse case with past history of violence by father. . . . Parents use son to take anger away from their arguments, both parents do over discipline son." The record also details the circumstances of Rondell's injury as related by the mother and child and appellant's corroborating statements.

Mil.R.Evid. 803(8)(B) provides for the admission of official records setting forth "matters observed pursuant to a duty imposed by law as to which matters there was duty to report, excluding, however, matters observed by police officers and other personnel acting in a law enforcement capacity." The limitation that such matters be "observed" is obviously meant to distinguish between matters based on personal knowledge which are perceived by the individual recording them and conclusions of fact which are dependent on matters which are not within the personal knowledge of the recorder and thus which are not themselves normally admissible in evidence. The latter most often will come into play in the form of hearsay statements. Such statements either independently, or in the form of official records, lack the requisite trustworthiness and should not be admitted. The result is not changed by application of

---

a doctor who was treating his patient for an adverse reaction to drugs, needed to know the name of the individual who had dispensed the drugs. Of course the identification of an assailant by name or description may also qualify for

admission under a separate exception to the hearsay rule, usually, in the form of an excited utterance under Mil.R.Evid. 803(2). *See United States v. Nick*, 604 F.2d 1199 (9th Cir. 1979).

Mil.R.Evid. 701 or 704. Opinion evidence is not a proper "backdoor" route for the admission of hearsay facts. *See United States v. Ruffin*, 575 F.2d 346, 356–358 (2d Cir. 1978); *United States v. Brown*, 548 F.2d 1194, 1204–06 (5th Cir. 1977).

▆ In the present case, the extract of appellant's medical records containing the social worker's detailed accounts of the mother and child's version of the incident is clearly hearsay evidence. As there is not a separate basis for its admission, it should not qualify for admission as an official record.

▆ The admission made by appellant presents a different dilemma. Had the social worker who heard the admission testified at trial, the testimony would probably have qualified as an exception to the hearsay rule under Mil.R.Evid. 801(d)(2)(A). *See United States v. Maddox*, 444 F.2d 148 (2d Cir. 1971). Nevertheless, the statement is inadmissible because the record fails to establish that the questioning by the social service worker was preceded by advice concerning the appellant's Article 31, UCMJ, 10 U.S.C. § 831, rights. *See United States v. Frederick*, 3 M.J. 230 (CMA 1977); *United States v. Babbidge*, 18 U.S.C.M.A. 327, 40 C.M.R. 39 (1969).[3]

### III

Prejudice in the instant case is apparent. Accordingly, the findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.[4]

Senior Judge MITCHELL and Judge LEWIS concur.

---

**3.** We recognize that Article 31 rights are not required of medical doctors and related personnel who question an individual solely to obtain information upon which to predicate a medical diagnosis or to render treatment. *United States v. Fisher*, 21 U.S.C.M.A. 223, 44 C.M.R. 277 (1972). Furthermore, the questioning may concern an individual's mental health as well as his physical health. *United States v. Malum-* *phy*, 13 U.S.C.M.A. 60 (1962). Nevertheless, we view the questioning in the instant case as too closely connected with the criminal investigation to convince us that the questions were "solely for medical purposes."

**4.** Our disposition in this case renders appellant's other assignments of error moot.