UNITED STATES, Appellee

v

HAYDEN STEELE FISHER, III, Yeoman Third Class, U. S. Navy, Appellant

21 USCMA 223, 44 CMR 277

No. 24,557

March 3, 1972

*Lieutenant Kenneth N. Beth,* JAGC, USNR, argued the cause for Appellant, Accused.

*Captain Donald B. Myers,* USMCR, argued the cause for Appellee, United States. With him on the brief was *Commander Michael F. Fasanaro, Jr.,* JAGC, USN.

## Opinion of the Court

QUINN, Judge:

The United States Navy Court of Military Review affirmed the accused's conviction of wrongful use of cocaine, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. In the course of its review, the court sustained a ruling by the trial judge admitting into evidence the accused's answers to certain questions by an Army doctor, over defense counsel's objection on the ground that the doctor had not first advised the accused of the right to remain silent under Article 31, Code, supra, 10 USC § 831. The evidence indicated that the accused had been brought to the emergency room, and then to the intensive care unit, of an Army hospital. He was in a state of respiratory depression and his level of consciousness was "stuporous"; he was "in immediate danger of [suffering] serious physical consequences." The court determined the questions asked by the doctor were necessary "for treatment and diagnostic purposes," and it concluded that, under the circumstances, Article 31 was inapplicable. The Judge Advocate General of the Navy certified the record to this Court to determine whether the decision of the Court of Military Review was correct, and accused petitioned for review on the same issue.

Among other things, Article 31 provides that no person subject to the Uniform Code may "interrogate, or request any statement" from anyone also subject to the Code, who is suspected or accused of an offense, without first advising the suspect or accused of the right to remain silent. A statement obtained without the preliminary advice is not admissible in evidence against the suspect or accused at a court-martial. United States v Wilson, 2 USCMA 248, 8 CMR 48 (1953); United States v King, 14 USCMA 227, 34 CMR 7 (1963). See also United States v Tempia, 16 USCMA 629, 37 CMR 249 (1967).

As applied to the interrogation of a suspect by a criminal investigator, the language of Article 31 is "plain and unequivocal." United States v Wilson, supra, page 255. Applied to other kinds of questioning, however, the literal language is revealed as questionable. Applied literally, the Article would, for example, require exclusion of testimony as to incriminating statements by the accused to the witness because the witness had not first advised the accused of the right to remain silent in a private discussion between the two, with each questioning the other about the particulars of his conduct in the commission of a crime in which both had participated. It was, therefore, apparent early in the operation of the Uniform Code that not every interrogation or request for a statement is subject to the preliminary warning requirement of Article 31.

Analysis of the language, the history, and the purpose of Article 31 has identified more precisely the kind of questioning that is subject to the Article. We have determined that if the request for a statement is made in the "course of official interrogation" by a law enforcement officer or by a person with disciplinary authority over the accused, Article 31 is applicable. United States v Dandaneau, 5 USCMA 462, 464, 18 CMR 86 (1955); United States v Gorko, 12 USCMA 624, 31 CMR 210 (1962). Article 31 is also applicable to questioning of a suspect by a person subject to the Code who has no enforcement or

direct disciplinary power over the suspect if the questioner is endeavoring to perfect a criminal case against the suspect. United States v Souder, 11 USCMA 59, 28 CMR 283 (1959). Thus, the purpose of the questioning and the functions of the questioner are important to a determination of whether the interrogation or request for a statement is within or outside the purview of Article 31.

A medical doctor who questions an individual solely to obtain information upon which to predicate a diagnosis, so that he can prescribe appropriate medical treatment or care for the individual, is not performing an investigative or disciplinary function; neither is he engaged in perfecting a criminal case against the individual. His questioning of the accused is not, therefore, within the reach of Article 31. We so held in United States v Baker, 11 USCMA 313, 29 CMR 129 (1960), and United States v Malumphy, 12 USCMA 639, 31 CMR 225 (1962).

In the *Baker* case, a doctor examined the accused in a routine physical examination for prisoners. He noticed needle marks on the accused's arms. He regarded the marks as "neutral" circumstances because they could have come from proper medical procedures. Rejecting a defense contention that the doctor's testimony as to narcotic use was inadmissible because the accused was not first advised of the right to remain silent, we noted that even if the doctor had, before he questioned the accused, "concluded the use of narcotics was a distinct possibility," if his purpose was to acquire information solely for medical reasons, "his questioning was proper and not in contravention of the Article." Malumphy, supra, was later modified on the presentation of new facts in a petition for a new trial, 13 USCMA 60, 32 CMR 60 (1962), but the modification did not affect the rationale of our first opinion on the facts then before the Court. There, we "reject[ed]" the accused's argument that, because he had not been first informed of his right to remain silent under Article 31, his answers to questions by the doctors were inadmissible in evidence against him. We noted that the accused had been admitted to the hospital "for medical examination" and that this examination was the sole "concern of the doctors." We concluded that under the circumstances the doctors "were under no obligation to warn the accused of his rights before interviewing him." United States v Malumphy, 12 USCMA 639, 640, 31 CMR 225 (1962).

Appellate defense counsel contend that United States v Babbidge, 18 USCMA 327, 40 CMR 39 (1969), and a line of cases culminating in United States v Ross, 19 USCMA 51, 41 CMR 51 (1969), narrowed *Baker,* supra, to allow into evidence only the doctor's medical opinion, not statements made by the accused under questioning by the doctor, unless the accused was first informed of the right to remain silent. The argument misconstrues the import of the cited cases. They dealt with waiver by the accused of the right to assert the applicability of Article 31 to rebuttal testimony of a Government expert witness as to his opinion of the accused's sanity. We held that reliance upon insanity for exoneration from criminal prosecution constituted a waiver by the accused of the right to remain silent at a Government-requested examination for psychiatric evaluation so that testimony by one of the psychiatrists, as to his opinion as to accused's sanity, was admissible in evidence against the accused, notwithstanding the accused was not first informed of his rights under Article 31. *Baker* and our first *Malumphy* decision dealt with the complete inapplicability of Article 31 to the particular kind of questioning to which the accused in those cases were subjected. Since the questions asked the accused by the doctor in this case were solely for medical diagnosis and treatment, the threshold advice prescribed by Article 31 was not required, and the accused's answers were admissible.

We answer the certified question in the affirmative, and we affirm the decision of the Court of Military Review.

Chief Judge DARDEN and Judge DUNCAN concur.